UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr., Esq. (wjmartin@pbnlaw.com)
Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com)
Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)
*Counsel to Debtor*

Order Filed on January 2, 2019
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In Re:

American Gaming & Electronics, Inc.,[1]

Debtor.

Case No.: 18- 30507  (ABA)

(Jointly Administered)

Chapter: 11

## ORDER CONFIRMING DEBTOR'S MODIFIED
## SECOND AMENDED PLAN OF REORGANIZATION

The relief set forth on the following pages, numbered two (2) through eighteen (18) and

including Exhibit A, is hereby **ORDERED**.

**DATED: January 2, 2019**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

---

[1] The debtors in these Chapter 11 Cases and the last four digits of their employee identification numbers were: American Gaming & Electronics, Inc. (4630) and AG&E Holdings Inc. (4630). Since the Petition Date, these companies have merged under state law, with the surviving entity, AG&E Holdings, Inc., d/b/a American Gaming & Electronics, Inc.

4113333

Page            2
Debtor:         In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:       18-30507 (ABA)
Caption:        ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF
                REORGANIZATION

**THIS MATTER** having been opened to the Court by AG&E Holdings, Inc., d/b/a

American Gaming & Electronics, Inc., the above-captioned debtor and debtor in possession (the

"Debtor" and, upon the Effective Date, "Reorganized Debtor"), by and through its counsel,

Porzio, Bromberg & Newman, P.C. upon the filing of the Debtor's Chapter 11 Plan (as amended,

the "Plan") (*see* Dkt. Nos. 45, 66 and 75), together with the Disclosure Statement[2] (as amended,

the "Disclosure Statement") (*see* Dkt. Nos. 44, 67 and 76); and upon that certain Order (I)

Approving Disclosure Statement, (II) Fixing A Voting Record Date, (III) Determining Treatment

Of Certain Claims For Notice And Voting Purposes, (IV) Establishing Procedures For Filing

Objections To The Plan And Temporary Allowance Of Claims, And (V) Approving Solicitation

Procedures For Confirmation Of The Plan Order (the "Disclosure Statement Order") (Dkt. No.

81); and the Debtor having further filed a Certification Of Chief Executive Officer Anthony

Tomasello In Support Of Confirmation Of The Plan (the "Tomasello Certification") (Dkt. No.

125), and that certain Certification Of Balloting (Dkt. No. 116); and the Court having heard the

arguments of counsel in support of confirmation of the Plan as well as any against confirmation

of the Plan at a hearing before the Court on December 21, 2018 (the "Confirmation Hearing");

and the Court having specifically overruled any Objections to confirmation; and upon all

testimony presented or proffered and evidence admitted at the Confirmation Hearing; and the

Court having taken judicial notice of the papers and pleadings on the Court's docket in the

Debtor's bankruptcy cases; and the Court finding that: (a) notice of the Confirmation Hearing

and the opportunity for any party in interest to object to the confirmation of the Plan was

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

2

4113333

| Page | 3 |
|---|---|
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

adequate and appropriate; and (b) the Debtor has established just cause for the relief granted herein;

### THE COURT HEREBY FINDS AND DETERMINES[3] THAT:

**A.    Jurisdiction and Venue.**

1.    On October 15, 2018 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L) and (O).

3.    As of the Petition Date, the Debtors' principal place of business was Hammonton, New Jersey. Accordingly, venue in the District of New Jersey (Camden Vicinage) was proper as of the Petition Date under 28 U.S.C. §§ 1408 and 1409.

**B.    Eligibility for Relief.**

4.    The Debtors were as of the Petition Date and remain today, entities eligible for relief under 11 U.S.C. § 109.

**C.    Judicial Notice.**

5.    This Court takes judicial notice of the entire docket in the chapter 11 case maintained by the Clerk of the Court including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the chapter 11 case, including, but not

---

[3] This Confirmation Order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Rule 9014 and 7052. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

3

Page            4
Debtor:         In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:       18-30507 (ABA)
Caption:        ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF
                REORGANIZATION

limited to, the hearing to consider the adequacy of the Disclosure Statement held on November 19, 2018.

**D.    Transmittal and Mailing of Materials**.

6.      The Solicitation Packages (as defined in the Disclosure Statement Order) and related mailing were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and all local bankruptcy rules, and such transmittal and service was sufficient, and no other or further notice is or shall be required.

7.      As established through the Certificate of Service filed with the Court at Docket No. 112, the Debtor provided good and sufficient notice of the Confirmation Hearing and the deadline for serving objections to the Plan.

**E.    11 U.S.C. § 1129.**

8.      For the reasons stated in the Tomasello Certification and on the record of the Confirmation Hearing, the Plan satisfies each and every requirement for confirmation under 11 U.S.C. § 1129.

**F.    11 U.S.C. § 1123(b)(6).**

9.      In accordance of section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with the Bankruptcy Code. The releases, discharges, exculpations and injunctions set forth in the Plan, including but not limited to those identified in Article IX of the Plan, are approved as fair, equitable, reasonable, and in the best interests of the Debtors, Reorganized Debtors, creditors, and equity holders.

**G.    Bankruptcy Rule 3016.**

10.     The Plan and Disclosure Statement satisfy Bankruptcy Rule 3016 (a) and (b).

4113333

Page          5
Debtor:        In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:      18-30507 (ABA)
Caption:       ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF
               REORGANIZATION

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**AS FOLLOWS:**

**1.      Confirmation of Plan.**

11.    The Second Amended Plan (as same has been subsequently modified, supplemented, and amended prior to the entry of this Order), is hereby confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code, except as modified by this Confirmation Order.   A copy of the Modified Second Amended Plan as approved pursuant to this Order is annexed hereto as **Exhibit A**.

12.    Any objections to confirmation of the Plan that have not been withdrawn or consensually resolved are overruled.

**2.      Ownership of the Debtor.**

13.    Effective immediately, and pursuant to sections 4.7 and 5.1 of the Plan, all interests of all existing stockholders or equity holders, save the interest of Anthony Tomasello, shall be discharged and cancelled and Anthony Tomasello shall become the 100% stockholder of the Debtor.  Thus, from and after the date of entry of this Confirmation Order, the Debtor shall become and shall hereinafter be a private entity owned 100% by the Plan Sponsor, Mr. Anthony Tomasello.

14.    To the maximum extent allowable under Section 1145 of the Bankruptcy Code, and pursuant to Section 5.6 of the Plan, the issuance and allocation of the Interests in the Reorganized Debtor pursuant to the Plan shall be exempt from registration under any federal, state or local law requiring registration for offer or sale of a security.

4113333

Page         6
Debtor:       In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:     18-30507 (ABA)
Caption:      ORDER   CONFIRMING   DEBTOR'S   MODIFIED   SECOND   AMENDED   PLAN   OF
             REORGANIZATION

15.     Pursuant to section 1146(a) of the Bankruptcy Code and applicable state law, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax. *See* Plan Section 11.12.

16.     Subsequent to the merger of American Gaming & Electronics, Inc., a Nevada corporation, in and to AG&E Holdings, Inc., and Illinois corporation, the Debtor's charter shall be amended to reflect the Debtor's name change to "American Gaming & Electronics, Inc." *See* Plan Section 5.10.

**3.     Releases.**

17.     As of the Effective Date, except as provided in the Plan or herein, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, or Anthony Tomasello, any other or further Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, except (the exception applying to Anthony Tomasello only) for any claims sounding in willful misconduct, actual fraud, gross negligence or personal injury.   In consideration of such release, Mr. Tomasello, the successor owner of the Reorganized Debtor, has, *inter alia*, contributed the "Confirmation Fund".

18.     This Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor

4113333

| | |
|---|---|
| Page | 7 |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

and/or Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim. *See* Plan Section 9.3.

19.     Via the signature of Anthony Tomasello, below, in his capacity as sole Director and Officer of the Reorganized Debtor, the Reorganized Debtor hereby undertakes and agrees to indemnify and hold harmless former Officers and Directors John R. Rauen, Sam A. Basile, Robert M. Pickus, and Francis X. McCarthy against any Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, except for claims based upon an adjudication of willful misconduct, actual fraud, or gross negligence.

## 4.     Plan Binding / Revesting of Assets / Jurisdiction.

20.     In accordance with section 1141 of the Bankruptcy Code, the provisions of the Plan shall be binding upon the Debtor and the Reorganized Debtor, any Person acquiring or receiving property under the Plan, any party to a contract or agreement with the Debtor or the Reorganized Debtor, any lessor or lessee of property to or from the Debtor or the Reorganized Debtor, and any Holder of a Claim against or an Interest in the Debtor or the Reorganized Debtor, whether or not such Claim or Interest is Impaired under the Plan and whether or not such Holder has filed a proof of Claim or Interest or has accepted the Plan.  Every Holder of a Claim or Interest shall be precluded and permanently enjoined from asserting against the Debtor or the Reorganized Debtor any Claim based on any act, omission, transaction, contract, invoice, bill, instrument, judgment, award, order, or other activity of any kind or nature that occurred prior the Petition Date.

Page:       8
Debtor:     In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:   18-30507 (ABA)
Caption:    ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF
            REORGANIZATION

21.     Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens expressly preserved and continued under the Plan as described in Plan Section 4.3). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting any of the foregoing, the Reorganized Debtor may pay the charges incurred on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

22.     In accordance with section 1142 of the Bankruptcy Code, upon the entry of this Confirmation Order, the Debtor and the Reorganized Debtor, acting by and through its officers and agents, is authorized to take any and all actions necessary or appropriate to implement the Plan without further order of this Court.

23.     All outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid shall be paid when due in the ordinary course. Such fees are required to be paid to the Office of the United States Trustee until the cases are closed, dismissed or converted.

4113333

Page          9
Debtor:       In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:     18-30507 (ABA)
Caption:      ORDER  CONFIRMING  DEBTOR'S  MODIFIED  SECOND  AMENDED  PLAN  OF
              REORGANIZATION

24.     In accordance with section 10.1 of the Plan, the Court retains jurisdiction over the Debtor and the Reorganized Debtor, its Estates, and the Plan as set forth therein and as permitted by applicable law and may issue any other order necessary to administer the Estates.

**5.     North Mill Financing.**

25.     Except as expressly provided for in section 4.3 of the Plan and this section 5 of the Confirmation Order, nothing in the Plan or the Confirmation Order shall or shall be deemed to in any way alter, amend, modify, revise or impair the rights, claims and interests of North Mill under the North Mill Loan Agreement. Except as expressly modified by the Plan and this section 5 of the Confirmation Order, all of North Mill's rights, claims and interests under the North Mill Loan Agreement shall survive until North Mill is paid in full on its secured claim, including, but not limited to all rights with respect to the guarantors as described in section 9.6 of the Plan. North Mill's liens against the Debtor and the assets of the Debtor and the Reorganized Debtor shall continue uninterrupted until the loan is paid in full, notwithstanding anything in the Plan. The guarantors on the North Mill Loan shall remain fully liable to North Mill for the original amounts, terms and rates of interest (including default interest) as is set forth in the North Mill Prepetition Loan Documents as well as in the North Mill Final DIP Order until the loan is paid in full.

26.     No future modification of the Plan or this Confirmation Order, as may otherwise be permitted or allowed by 11 U.S.C. § 1127(b), shall alter, modify, amend, restate, revise or otherwise impair any of North Mill's rights hereunder or under the Plan, unless North Mill has, in its sole discretion, previously consented thereto in writing.

4113333

| | |
|---|---|
| Page | 10 |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

27.     Upon entry of this order, any and all obligations of the Debtor and/or Reorganized Debtor to North Mill with respect to the junior participation interest of Anthony Tomasello in the North Mill Loan in the principal amount of $160,000 shall be and hereby is released and discharged, and such liability shall no longer exist.    In turn, any liability of North Mill to Anthony Tomasello in connection with the junior participation interest of Anthony Tomasello in the North Mill Loan in the principal amount of $160,000 shall simultaneously be and hereby is released and discharged and such liability shall no longer exist.

28.     As placed on the record on December 21, 2018, the date of the Confirmation Hearing in this matter, the North Mill Loan balance on that date (assuming release and discharge in accordance with paragraph 27, above, of the $160,000 junior participation interest of Anthony Tomasello) totals approximately $350,000, not including fees and interest.

29.     On or before December 24, 2018, Anthony Tomasello shall pay the sum of $50,000 to North Mill from personal funds, in order to reduce the Debtor's indebtedness to North Mill to approximately $300,000, using the December 21, 2018 Loan balance described in paragraph 28, above, not including fees and interest.

30.     The Effective Date of the Plan shall not occur until the North Mill Loan is paid in full.

31.     The North Mill Loan shall be paid in full by the Debtor and/or Anthony Tomasello on or before January 4, 2019.  If payment is not made by such time, the Debtor shall be deemed in default of the North Mill Loan, and North Mill shall be entitled to pursue any and all remedies outlined under the North Mill Loan documents.

4113333

| | |
|---|---|
| Page | 11 |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

32.     Upon full payment of the North Mill Loan, North Mill shall provide a general release of the Debtor, the Reorganized Debtor, and the guarantors, and the Debtor, Reorganized Debtor, and the guarantors shall provide a general release to North Mill.

33.     To the extent that by virtue of the historical lock box arrangement between the Debtor and North Mill, customers/account debtors continue to deliver their payments to the North Mill lock box account at Wells Fargo after North Mill has been paid in full, the Debtor or the Reorganized Debtor shall be responsible for setting up a new account and beginning on the date that North Mill is paid in full, the parties will work together as follows:  (i) North Mill shall instruct Wells Fargo to refrain from cashing any customer checks or from depositing them into the lockbox account and shall instead instruct Wells Fargo to FedEx all uncashed customer checks to American Gaming & Electronics, 223 Pratt St, Hammonton, NJ 08037, with the charges for such FedEx to be charged to recipient, and (ii) with respect to ACH transfers, North Mill shall instruct Wells Fargo to move such collected amounts from the North Mill lock box account to the Debtor/Reorganized Debtor's new account.  The parties will work together to accomplish this transition for a period of 30 days, in order to provide the Debtor/Reorganized Debtor with sufficient time to advise each of its customers of new payment arrangements.  All incidental costs of transferring funds over, including bank fees and the like shall be the responsibility of the Debtors or Reorganized Debtors.  At the conclusion of the 30-day period, no further ACH transfers nor payments of any type will be accepted into the North Mill lock box account at Wells Fargo.  In the event that a customer's ACH transfer shall be reversed for any reason or no reason after the date that North Mill has been paid in full and released its liens, the Reorganized Debtor shall be responsible to make good on the reversed transaction and to cover

4113333

Page          12
Debtor:       In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:     18-30507 (ABA)
Caption:      ORDER  CONFIRMING  DEBTOR'S  MODIFIED  SECOND  AMENDED  PLAN  OF
              REORGANIZATION

all bank fees and incidental charges relating to same and the Tomasello personal guaranty shall

continue in full force and effect to cover all such obligations with respect to any such reversed

customer transactions.

34.    To the extent that North Mill is required to file any documents to evidence the

continuation of its lien as against the Reorganized Debtor through the date of payment in full, the

automatic stay provisions of the Bankruptcy Code are waived and/or annulled to permit such

filing(s).

**6.    Administrative Claims.**

35.    Pursuant to section 3.3 of the Plan, the Reorganized Debtor is assuming, in the

ordinary course of business, and shall pay, as and when they become due in the ordinary course

of business and pursuant to regular trade terms, all General Administrative Claims.

**7.    Executory Contracts.**

36.    Pursuant to section 365 of the Bankruptcy Code and as stated in Article VII of the

Plan, the Debtor's proposed assumption of the Executory Contracts/Unexpired Leases listed at

Schedule 1 annexed to the Plan is hereby approved, effective as of the Confirmation Date.  For

the avoidance of doubt, and subject to section 5.8 of the Plan (and paragraph 33 herein), all

contracts shall be rejected with the exception of the Wells Fargo contract regarding the Xerox

Copier Model # B7035 Serial # 5DA092103, Account No. 603-0188838-000.  The cure amounts

set forth on Schedule 1 to the Plan with respect to the assumed Executory Contracts/Unexpired

Leases shall govern the amount of the Debtor's and Reorganized Debtor's obligations under such

Executory Contracts/Unexpired Leases for all purposes and for all time periods up to and

including the Confirmation Date and any counterparty to an Executory Contract/Unexpired

4113333

| | |
|---|---|
| Page | 13 |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

Lease shall be forever barred and enjoined from seeking or claiming any other or further amounts from the Debtor or the Reorganized Debtor for any amounts that may be past due under such Executory Contracts/Unexpired Leases.

37.    This Confirmation Order shall not affect any Executory Contract/Unexpired Lease that is expressly assumed or rejected by prior order of the Court pursuant to section 365 of the Bankruptcy Code.

38.    Any Executory Contract/Unexpired Lease not assumed to date by separate order of the Court or pursuant to this Confirmation Order and Schedule 1 to the Plan shall be deemed rejected effective as of the Confirmation Date.

39.    This Confirmation Order shall constitute an Order of the Bankruptcy Court, pursuant to Section 365 of the Bankruptcy Code, approving the assumption or rejection of each Executory Contract/Unexpired Lease as set forth above.

40.    Any claim resulting from a rejection of an Executory Contract/Unexpired Lease must be filed in accordance with Plan section 7.3 within thirty (30) days from the entry of this Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a distribution or enforcement against the Debtor or the Reorganized Debtor or their successors, assigns or assets.

**8.    Employee Obligations.**

41.    Pursuant to Section 5.8 of the Plan and except as otherwise provided in the Plan, the Reorganized Debtor shall honor the Debtor's written contracts, agreements, policies, programs and plans for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and

4113333

| Page | 14 |
| --- | --- |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of the Debtor who served in such capacity at any time.  To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to Sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and assigned to the Reorganized Debtor.

### 9.    Utility Deposits.

42.    On the Effective Date, and pursuant to Section 5.10 of the Plan, all adequate assurance deposits made by the Debtor pursuant to the Interim Order dated October, 2018 *(i) Prohibiting Utility Companies From Discontinuing, Altering Or Refusing Service On Account Of Prepetition Invoices, (ii) Deeming Utility Companies To Have Adequate Assurance Of Future Payment, And (iii) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) and 366* (Dkt. No. 27), and any subsequent Final Order regarding same, shall be returned to the Debtor, and Debtor shall have no further obligation to maintain security deposits for  utility providers beyond the terms of any written agreements with such providers.

### 10.    Claim Objections.

43.    Prior to the Effective Date, the Debtor shall have standing and the right to commence and pursue objections to Claims, and the Reorganized Debtor shall have such standing after the Effective Date.  Pursuant to Plan Sections 1.18 and 6.12, all objections to

4113333

| | |
|---|---|
| Page | 15 |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

Claims shall be Filed with the Bankruptcy Court by the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days after a Proof of Claim or request for payment with respect to a Claim is filed, unless the objection deadline is extended by order of the Bankruptcy Court upon the request of the Reorganized Debtor, and served upon the Holders of each of the Claims to which objections are made. The Debtor or Reorganized Debtor shall have the right, after notice and a hearing, to seek an extension of the Claim Objection Deadline and such an extension shall not be deemed a material modification of the Plan.

44.     An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court by the Debtor or Reorganized Debtor. Except as expressly set forth herein, nothing herein, in the Confirmation Order or in any Order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, Avoidance Action, right of setoff or recoupment or other legal or equitable defense which the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim. Except as set forth herein, upon Confirmation, the Debtor and Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and recoupment and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim.

## 11.    Intercompany Claims.

45.     Pursuant to Section 4.5 of the Plan, any Claim previously held by AG&E Holdings, Inc. and American Gaming & Electronics, Inc. against each other shall not exist following the post-petition merger of these two companies. *See* Plan Section 1.46. For the

| Page | 16 |
|---|---|
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

avoidance of doubt, pursuant to the Plan, Intercompany Claims shall be expunged and shall not constitute Allowed Claims.

## 12.  Professional Fee Claims.

46.   On the first business day following the Confirmation Date, and as a condition precedent to the Plan going effective, the Professionals will receive from the Professional Fee Fund, payment in full of any and all fees payable as of that date pursuant to the Court's Administrative Fee Order entered by the Court on November 20, 2018, with the exception that to the extent that the Professional Fee Fund is insufficient to pay said amounts in full, then in such case professionals shall receive a respective pro-rata distributions of the Professional Fee Fund at that time.

47.   Thereafter, following Court Approval of the Professionals' Final Fee Applications, the Professionals will receive payment of any remaining unpaid portions of their Allowed Professional Fee Claims incurred through the Effective Date, without interest, in Cash, upon court approval of same, from the Reorganized Debtor.

48.   With respect to Podium Strategies LLC and McElroy, Deutsch, Mulvaney & Carpenter, LLP, ~~the Reorganized Debtor shall also be responsible for any amounts due to such~~ the parties' rights are reserved with regard hereto and the matters will be addressed pursuant to the schedule previously established by the court (see docket entries for 12/21/18) however, pursuant to the ~~professionals for time billed to the Debtor prior to the dates of their retention or the effective~~ court's General Order Incorporating By Reference Standing Order 18-4 of the United States District Court for ~~dates of their retention.~~ the District of New Jersey As Applied to Bankruptcy Cases and Adversary Proceedings, dated 12/28/18, those matters are temporarily stayed and can be rescheduled once the stay expires.

## 13.  Disbursing Agent.

49.   Porzio, Bromberg & Newman shall be the Disbursing Agent in accordance with Section 6.1 of the Plan and shall be responsible for all distributions required under the Plan, including (A) distributions from the Unsecured Creditor Fund under Section 4.4 of the Plan, and

16

4113333

| | |
|---|---|
| Page | 17 |
| Debtor: | In Re: AMERICAN GAMING & ELECTRONICS, INC. |
| Case No.: | 18-30507 (ABA) |
| Caption: | ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION |

(B) distributions from the Professional Fee Fund under Section 3.2 of the Plan.  Notwithstanding the foregoing, Porzio, Bromberg & Newman shall have no obligation to make distributions from the Confirmation Fund on account of either Priority Claims or Administrative Claims, both of which shall be the responsibility of the Reorganized Debtor.

## 14.   NOLS

50.    Under the Plan, and pursuant to section 382(l)(5) of the Internal Revenue Code, the Debtor's Net Operating Loss carryforwards ("NOLs") will remain with the Reorganized Debtor insofar as an existing 31% equity owner, specifically, the Plan Sponsor has become the 100% owner of the stock of the Reorganized Debtor, in compliance with the "greater than 50%" requirement set forth in IRC section 382(l)(5).   Confirmation of the Plan, and the discharge obtained pursuant to section 1141(d)(1) of the Bankruptcy Code will also constitute a cancellation of substantial amounts of indebtedness of the Debtor, resulting in what is known as Cancellation of Indebtedness Income ("CODI").   Pursuant to IRC Section 108(b)(2)(A), the NOLs that pass to the Reorganized Debtor will be reduced by the CODI, on a dollar for dollar basis.  Nothing contained herein or in the Plan shall impair the Debtor's rights under the Internal Revenue Code with respect to the NOLs.

## 15.   Effectiveness of All Actions.

51.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Court.

4113333

Page:          18
Debtor:        In Re: AMERICAN GAMING & ELECTRONICS, INC.
Case No.:      18-30507 (ABA)
Caption:       ORDER CONFIRMING DEBTOR'S MODIFIED SECOND AMENDED PLAN OF
               REORGANIZATION

**16.    Approval of Consents / Authorization to Consummate / This Order Controls.**

52.    The Debtor and the Reorganized Debtor are authorized to consummate the Plan, and in connection therewith are authorized to execute any agreements or documents, and take such actions as may be necessary or appropriate to effectuate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Confirmation of the Plan.

53.    If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**17.    Final Confirmation Order / Waiver of Stay**

54.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

55.    The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

_/s/ Anthony Tomasello_____
Anthony Tomasello, President, Reorganized Debtor

4113333

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-1** | |
|---|---|
| **PORZIO, BROMBERG & NEWMAN, P.C.** 100 Southgate Parkway P.O. Box 1997 Morristown, New Jersey 07962 (973) 538-4006 (973) 538-5146 Facsimile Warren J. Martin Jr., Esq. (wjmartin@pbnlaw.com) Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com) Rachel A. Parisi, Esq. (raparisi@pbnlaw.com) *Counsel to Debtor* | |
| In Re: American Gaming & Electronics, Inc.,[1] Debtors. | Case No.: 18-30507 (ABA) (Jointly Administered) Chapter: 11 |

## DEBTOR'S MODIFIED SECOND AMENDED PLAN OF REORGANIZATION

---

[1] The debtors in these Chapter 11 Cases and the last four digits of their employee identification numbers were: American Gaming & Electronics, Inc. (4630) and AG&E Holdings Inc. (4630). Since the Petition Date, these companies have merged, with the surviving entity, AG&E Holdings, Inc., d/b/a American Gaming & Electronics, Inc.

4054967

# TABLE OF CONTENTS

ARTICLE  I. DEFINITIONS ..................................................................................................- 1 -

ARTICLE  II. CLASSIFICATION OF CLAIMS AND INTERESTS.......................................- 9 -

ARTICLE  III. TREATMENT OF UNCLASSIFIED CLAIMS..............................................- 10 -

ARTICLE  IV. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS....................- 11 -

ARTICLE  V. MEANS FOR IMPLEMENTATION OF THE PLAN .....................................- 14 -

ARTICLE  VI. PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY .................- 16 -

ARTICLE  VII. TREATMENT OF EXECUTORY CONTRACTS AND
              UNEXPIRED LEASES .......................................................................- 19 -

ARTICLE  VIII. CONDITIONS PRECEDENT ......................................................................- 21 -

ARTICLE  IX. EFFECTS OF CONFIRMATION ..................................................................- 22 -

ARTICLE  X. RETENTION OF JURISDICTION .................................................................- 25 -

ARTICLE  XI. MISCELLANEOUS PROVISIONS................................................................- 26 -

ARTICLE  XII. MODIFICATION OF THE PLAN ................................................................- 29 -

# LIST OF SCHEDULES

SCHEDULE 1        LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASEOF
                    NON-RESIDENTIAL REAL PROPERTY ASSUMED UNDER THE
                    PLAN.

## INTRODUCTION

AG&E Holdings, Inc., d/b/a American Gaming & Electronics, Inc., as debtor and debtor-in-possession (the "**Debtor**" or "**Debtor-in-Possession**"), pursuant to the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended) (the "**Bankruptcy Code**"), submits this Plan of Reorganization for the resolution of its outstanding Claims and Interests (as those terms are defined herein).  For a discussion of the Debtor's history, business, risk factors associated with the Plan and for a summary and analysis of the Plan and related matters, reference is made to the Disclosure Statement (as defined herein).

Subject to the restrictions on modification set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure and the provisions of the Plan, the Debtor expressly reserves its rights to alter, amend, or modify the Plan, as needed, before its substantial consummation.

## ARTICLE I.
## DEFINITIONS

Unless otherwise provided in the Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules.  For the purposes of the Plan, the following terms (which appear in the Plan in capitalized forms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

1.1    "**Administrative Claim**" shall mean, and be the collective reference to, all costs and expenses of administration of this case with priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation, costs and expenses allowed under Section 503(b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Estate of the Debtor, excluding Professional Fee Claims, the  North Mill Claim and any Claims for U.S. Trustee Fees.

1.2    "**AG&E Holdings, Inc.**" shall mean, as of the Petition Date and prior to the Court approved merger of American Gaming & Electronics, Inc. into it, the parent and 100% owner of co-debtor, American Gaming & Electronics, Inc.  It had no assets other than its ownership interest in the co-debtor.

1.3    "**Allowed**" shall mean (a) when used with respect to a General Administrative Claim, a claim for which an Administrative Proof of Claim has been filed by the Administrative Claims Bar Date, and such claim has either: (i) not been objected to by the date of any deadline set by the Court for objection to administrative claims, or (ii) has been objected to and the Claim has been approved by Final Order of the Court allowing the amount of the Claim; or (b) when used with respect to claims other than Administrative Claims, such Claim or any portion thereof (i) has been allowed or adjudicated in favor of the Holder by estimation or liquidation in a Final Order; (ii) a Proof of Claim has been Filed and no objection has been Filed by the Debtor by any deadline set by the Court for filing objections to claims; (iii) the Claim has been scheduled by the Debtor without any listing of "Contingent, Unliquidated, or Disputed" in

- 1 -

4054967

the Debtor's Schedules; or (iv) that is expressly allowed in a liquidated amount in the Plan. If a Proof of Claim in a liquidated amount has been timely Filed and an objection to the allowance thereof is timely Filed, then the claim shall be Allowed only to the extent that such objection has been settled or withdrawn or the Claim or Interest has been Allowed by a Final Order. No Claim or Interest shall be Allowed to the extent that the Holder thereof either possesses property recoverable by the Estates under Sections 542, 543, 550, or 553 of the Bankruptcy Code or is the transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code until such time as such Holder has paid the amount or turned over any such property for which the Holder is liable. Except as otherwise specified in the Plan or a Final Order (e.g., with respect to the North Mill Claim) the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.

**1.4** **"Allowed Professional Fee Claim"** shall mean (a) prior to the time that the Court has entered Final Orders pursuant to Section 6.2(b) of the Plan approving the Allowed amount of Professional Fee Claims, all professional fees authorized to be paid pursuant to the Administrative Fee Order Establishing Procedures For Allowance and Payment of Interim Compensation and Reimbursement of Expenses to Professionals; and (b) after the time that the Court has entered Final Orders pursuant to Section 6.2(b) of the Plan, the amount approved for the respective Professional as contained in such Final Order.

**1.5** **"Allowed" [Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, or Class 7 Claim]** as the case may be, shall mean an Allowed Claim in the designated Class.

**1.6** **"Unsecured Claim"** shall mean any Claim which is not a (i) Secured Claim, (ii) North Mill Claim, (iii) Junior DIP Claim; (iv) Administrative Claim, (v) Professional Fee Claim, (vi) Priority Claim, (vii) Priority Tax Claim, or (viii) Claim for U.S. Trustee Fees.

**1.7** **"American Gaming & Electronics, Inc."** shall mean, as of the Petition Date and prior to its merger with and into AG&E Holdings, Inc., the operating company that was a co-debtor herein, and a separate entity 100% owned by co-debtor, AG&E Holdings, Inc.

**1.8** **"Assets"** shall mean all of the rights, title, and interests of the Debtor in and to property of any type or nature (real, personal, intangible, and mixed), known and unknown, including property of the Estates as such property is defined in Section 541 of the Bankruptcy Code, as well as all property and Cash in the Debtor's possession, custody, or control on the Effective Date, including without limitation Claims, Causes of Action and the proceeds thereof, and Insurance Policies and the proceeds thereof.

**1.9** **"Avoidance Action(s)"** shall mean all claims and causes of action arising under Chapter 5 of the Bankruptcy Code and any fraudulent conveyance or transfer actions to be brought under state or federal law.

**1.10** **"Bankruptcy Cases"** shall mean the chapter 11 bankruptcy cases of AG&E Holdings, Inc. and American Gaming & Electronics, Inc. filed on October 15, 2018 pending before the Bankruptcy Court and as being jointly administered with one another under Case No. 18-30507 (ABA); and as to any Debtor individually, a Bankruptcy Case. With the merger of the companies, the continuing Bankruptcy Case is with respect to Case No. 18-30507.

- 2 -

**1.11** **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended.

**1.12** **"Bankruptcy Court" or "Court"** shall mean the United States District Court for the District of New Jersey with jurisdiction over the Debtor's Bankruptcy Case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of New Jersey, or any court having competent jurisdiction to enter the Confirmation Order.

**1.13** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, and the Local Rules of the Bankruptcy Court, as applicable to the Cases or proceedings therein, as the case may be.

**1.14** **"Bar Date"** shall mean the General Unsecured and Priority Claims Bar Date, i.e., December 7, 2018,, which was the last date set pursuant to the General Bar Date Order entered by the Court on October 18, 2018 [Docket No. 28] for each Person to file a proof of claim pursuant to Bankruptcy Rule 3002.

**1.15** **"Business Day"** shall mean any day, excluding Saturdays, Sundays, or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Newark, New Jersey.

**1.16** **"Cash"** shall mean legal tender of the United States of America and equivalents thereof.

**1.17** **"Cause of Action"** or **"Causes of Action"** shall mean all claims, causes of action, third-party claims, counterclaims and cross-claims of any kind or nature (including but not limited to any Causes of Action described in the Disclosure Statement) against any entity based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, inclusive of Avoidance Actions.

**1.18** **"Claim Objection Deadline"** means the date that is the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days after a Proof of Claim or request for payment with respect to a Claim is filed, unless the objection deadline is extended by order of the Bankruptcy Court upon the request of the Reorganized Debtor.

**1.19** **"Claim"** shall mean a claim against the Debtor as defined by Section 101(5) of the Bankruptcy Code.

**1.20** **"Class"** shall mean any category of Holders of Claims or Interests as specified in Article II of the Plan.

**1.21** **"Committee"** shall mean any Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these cases.

**1.22** **"Confirmation"** shall mean the entry of the Confirmation Order on the dockets of the Bankruptcy Cases.

4054967

1.23 **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.24 **"Confirmation Fund"** shall mean the sum of up to $300,000 to be contributed by the Plan Sponsor prior to the Effective Date and used to: (i) supplement cash on hand on the Effective Date to create the Professional Fee Fund which fund shall have a balance of $200,000 as of the Effective Date, and (ii) create the Unsecured Creditor Fund in the amount of $100,000. The Confirmation Fund shall be funded prior to the Effective Date, and the Disbursing Agent shall have exclusive authority to make distributions from the Confirmation Fund.

1.25 **"Confirmation Hearing"** shall mean the hearing(s) at which the Bankruptcy Court considers confirmation of the Plan.

1.26 **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan, pursuant to Section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

1.27 **"Creditor"** shall mean a Holder of a Claim against the Debtor.

1.28 **"Debtor"** shall mean, post-merger, AG&E Holdings, Inc., d/b/a American Gaming & Electronics, Inc., as debtor-in-possession in the Bankruptcy Case. Any reference to the Debtor shall be a reference to the Reorganized Debtor if such reference is to the Debtor from and after the Effective Date.

1.29 **"Disbursing Agent"** shall mean Porzio, Bromberg & Newman, P.C.

1.30 **"Disclosure Statement"** shall mean the written Disclosure Statement for this Joint Plan of Reorganization approved in accordance with Section 1125 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules.

1.31 **"Disclosure Statement Order"** shall mean the Order Approving the Disclosure Statement entered by the Bankruptcy Court.

1.32 **"Disputed"** shall mean, with respect to any Claim that has not been Allowed, as to which the Debtor or Reorganized Debtor has timely Filed a Claim objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise challenged by the Debtor or Reorganized Debtor in accordance with applicable law and the terms of the Plan.

1.33 **"Disputed Claim Reserve"** shall mean such amounts as are necessary to satisfy all distributions in respect of Disputed Claims assuming that all Disputed Claims are Allowed in the amount asserted by the Holders of such Disputed Claims.

1.34 **"Distribution Date"** shall mean the date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than fourteen (14) days after the Effective Date, without further Bankruptcy Court Order.

- 4 -

1.35    **"Effective Date"** shall mean the first Business Day on which all conditions precedent to the effectiveness of the Plan have been satisfied or waived as provided in the Plan, unless extended in accordance with the terms of the Plan.

1.36    **"Estate"** shall mean the Estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

1.37    **"Executory Contract/Unexpired Lease"** shall mean any executory contract or unexpired lease between the Debtor and any other Person.

1.38    **"Filed"** shall mean filed with the clerk of the Bankruptcy Court in the Bankruptcy Cases.

1.39    **"Final Decree"** shall mean the decree contemplated under Bankruptcy Rule 3022.

1.40    **"Final Order"** shall mean an order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (i) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, *writ of certiorari*, or other proceedings for reargument or rehearing are then pending or (ii) in the event that an appeal, *writ of certiorari*, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body has been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing has expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure, Rule 9024 of the Bankruptcy Rules, or any similar rule under the Bankruptcy Rules or the Federal Rules of Civil Procedure may be filed with respect to such order..

1.41    **"General Unsecured Claim"** shall mean any Claim against the Debtor, other than a Secured Claim, the North Mill Claim, an Administrative Claim, a Professional Fee Claim, a Claim for U.S. Trustee Fees, a Priority Tax Claim, a Priority Claim, a Subordinated Claim, or an Interest.

1.42    **"Holder"** shall mean the owner or holder of any Claim or Interest.

1.43    **"Impaired"** shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

1.44    **"Insider"** shall have the meaning assigned to such term in Section 101(31) of the Bankruptcy Code.

1.45    **"Insurance Policy"** shall mean any contract of or other rights to insurance under which the Debtor has, may have or assert any direct rights as an insured party, additional named insured party, loss payee, or otherwise.

1.46    **"Intercompany Claims"** means, collectively, any Claim previously held by AG&E Holdings, Inc. and American Gaming & Electronics, Inc.  No Intercompany Claims exist following the post-petition merger of these two companies as approved by the Court.

- 5 -

1.47    **"Interest"** shall mean the legal, equitable, contractual, or other rights of a Holder of any existing equity interest in the Debtor or Reorganized Debtor (solely in their capacity as Holders thereof), and shall include, any common stock, or equity security as defined in section 101(16) of the Bankruptcy Code, equity, ownership, profit interest, unit or share in the Debtor, including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in the Debtor, whether or not arising under or in  connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, as well as the rights of any Person to purchase or demand the issuance of any such interest, including (i) conversion, exchange, voting, participation, and dividend rights; (ii) liquidation preferences; (iii) stock options, warrants, and put rights; and (iv) share-appreciation rights; or (v) any other stock, membership, or other equity right pertaining or in any way relating to the Debtor or Reorganized Debtor.

1.48    **"Lien"** shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.49    **"Merger"** shall mean the Court approved merger of American Gaming & Electronics, Inc. with and into AG&E Holdings, Inc., with the surviving entity, AG&E Holdings, Inc. d/b/a "American Gaming & Electronics, Inc."

1.50    **"North Mill"** shall mean North Mill Capital LLC.

1.51    **"North Mill Claim**" shall mean any and all Claims, of any and every kind or nature, of North Mill arising under or based upon the prepetition North Mill Loan as well as based upon the North Mill Cash Collateral and DIP Agreement and Consent Order [Docket No. 23].

1.52    "**North Mill Cash Collateral and DIP Agreement**" shall mean that certain Agreement attached as Exhibit A to Docket No. 12, as approved in the Bankruptcy Cases on October 18, 2018 on an interim basis [Docket No. 23], collectively with all related documents and agreements, and any amendments, modifications and revisions thereto, as approved and authorized by the Bankruptcy Court pursuant to the North Mill  Interim Cash Collateral and DIP Order and the North Mill Final Cash Collateral and DIP Order.

1.53    **"North Mill Final Cash Collateral and DIP Order"** shall mean the Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503 and 507 (1) Authorizing Debtors to (A) and Granting Other Related Relief, to be entered by the Bankruptcy Court.

1.54    **"North Mill Loan"** or **"North Mill Facility"** shall mean that prepetition loan evidenced by, *inter alia*, a Loan and Security Agreement dated November 22, 2017 with North Mill Capital (the "**North Mill Loan Agreement**"), as may be amended, supplemented, amended and restated or otherwise modified from time to time.

1.55    **"Objection Deadline"** shall mean the date established by the Bankruptcy Court in the Disclosure Statement Order for parties in interest to file objections to Confirmation of the Plan.

4054967

1.56    **"Other Secured Claim"** shall mean any Secured Claim against the Debtor, excluding the North Mill Claim.

1.57    **"Person"** shall mean any individual, corporation, limited liability company, professional corporation, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

1.58    **"Petition Date"** shall mean October 15, 2018, the date on which AG&E Holdings, Inc. and American Gaming & Electronics, Inc. filed the Bankruptcy Cases.

1.59    **"Plan"** shall mean this *Plan of Reorganization* and any exhibits and schedules hereto and any documents incorporated herein by reference as such Plan or such exhibits or schedules may be amended, modified, or supplemented from time to time.

1.60    **"Plan Sponsor"** shall mean Anthony Tomasello, the pre-petition 31% shareholder of AG&E Holdings, Inc. and President and Chief Executive Officer of the Debtor.

1.61    **"Post-Petition Interest"** shall mean with respect to Secured Claims entitled to interest pursuant to Section 506 of the Bankruptcy Code: (i) the interest accruing on such claims from the Petition Date through the Effective Date at the rate set forth in the contracts or other applicable documents giving rise to such Claims (to the extent lawful), (ii) if the applicable instruments do not specify a rate of interest, at the Federal Post-Judgment Rate of Interest as provide for in 28 U.S.C. § 1961, as in effect on the Petition Date, or (iii) as determined by the Bankruptcy Court to be required by Section 1124 of the Bankruptcy Code.

1.62    **"Priority Claim"** shall mean all Claims that are entitled to priority pursuant to Section 507 of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

1.63    **"Priority Tax Claim"** shall mean a Claim of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.64    **"Professional"** shall mean a Person (a) employed by the Debtor or any Committee formed by the United States Trustee pursuant to a Final Order in accordance with Sections 327, 328 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code by a Final Order.

1.65    **"Professional Fee Claim"** shall mean all Claims for fees and expenses asserted by Professionals retained by the Debtor and any Committee appointed in this Chapter 11 Case under Sections 330 and 331 of the Bankruptcy Code and which remain unpaid as of the Effective Date.

1.66    **"Professional Fee Fund"** shall mean the sum of $200,000, deposited by the Plan Sponsor with the Disbursing Agent prior to the Confirmation Date.

- 7 -

1.67    **"Proof of Claim"** shall mean a written statement that (i) sets forth a Claim and (ii) conforms substantially to the Bankruptcy Rules and any Final Order regarding same.

1.68    **"Record Date"** shall mean the date the Disclosure Statement Order is entered by the Bankruptcy Court.

1.69    **"Reinstated" or "Reinstatement"** shall mean or refer to a Claim provided with the treatment described under Section 1124 of the Bankruptcy Code.  All Reinstated Claims shall be Unimpaired.

1.70    **"Releasees"** shall mean, in conjunction with the Effective Date, the Reorganized Debtor and its current and former (but only as of the Petition Date) officers, directors, members, attorneys and advisors.

1.71    **"Reorganized Debtor"** shall mean, post-merger, the single surviving entity, AG&E Holdings, Inc., d/b/a American Gaming and Electronics, Inc. when used to refer to the Debtor on and after the Effective Date.

1.72    **"Reorganized American Gaming & Electronics, Inc."** shall mean the surviving reorganized Debtor entity on and after the Effective Date.

1.73    **"Schedules"** shall mean the Statement of Financial Affairs and Schedules of Assets and Liabilities, as same may be amended from time to time, filed by AG&E and American Gaming & Electronics, Inc. with the Bankruptcy Court on October 15, 2018 pursuant to Bankruptcy Rule 1007.

1.74    **"Substantial Consummation"** shall mean, in addition to its meaning under Section 1101(2) of the Bankruptcy Code, the occurrence of the Effective Date.

1.75    **"Secured Claim"** shall mean, a Claim that is (i) secured by a Lien on Assets, which Lien is valid, perfected and enforceable under applicable law by reason of a Final Order, limited to the extent of the Lien on such Assets; or (ii) subject to setoff, under Section 553 of the Bankruptcy Code, against any Assets, to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (iii) Allowed under the Plan as a Secured Claim.

1.76    **"Subordinated Claim(s)"** shall mean any Claim (i) that is subordinate to the rights of Holders of General Unsecured Claims by virtue of Section 510 of the Bankruptcy Code, applicable law or agreement, or (ii) asserted by an Insider of the Debtor, including, without limitation, those certain promissory note made by AG&E Holdings, Inc., in the amount of $2 million in favor of Anthony Tomasello.

1.77    **"Unclassified Claim(s)"** shall mean the General Administrative Claims, Priority Tax Claims, U.S. Trustee Fees and Professional Fee Claims.

1.78    **"Unimpaired"** means any Claim that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

 **1.79** **"Unsecured Creditor Fund"** means the sum of $100,000, deposited by the Plan Sponsor with the Disbursing Agent prior to the Effective Date.

 **1.80** **"U.S. Trustee"** shall mean the United States Trustee for Region 3.

 **1.81** **"U.S. Trustee Fees"** shall mean all outstanding fees payable to the Office of the U.S. Trustee under 28 U.S.C. § 1930 arising under both Bankruptcy Cases, including any interest due under 31 U.S.C. § 3717.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

 **2.1** **Classification**. All Claims and all Interests, as defined herein and in Section 101(5) of the Bankruptcy Code, except for the Professional Fee Claims, General Administrative Claims, U.S. Trustee Fees, and Priority Tax Claims, are placed into the Classes set forth below. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims, General Administrative Claims, U.S. Trustee Fees, and Priority Tax Claims, as described below, are not classified in the Plan, and the treatment of such Claims is set forth in Article II below. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, discharged, released or otherwise settled prior to the Effective Date.

 **2.2** **Unclassified Claims**. Unclassified Claims are not Impaired by the Plan. Each Holder of an Unclassified Claim is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan. The following are the Unclassified Claims: Professional Fee Claims, General Administrative Claims, U.S. Trustee Fees, and Priority Tax Claims.

 **2.3** **Classified Claims**. As set forth in the table below, Classes 1 & 2 are Unimpaired under the Plan, and, pursuant to Section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. Classes 5, 6, and 7 are fully Impaired and are not receiving any Distributions under the Plan and, pursuant to Section 1126(g) of the Bankruptcy Code, are conclusively presumed to have rejected the Plan. Classes 3 and 4 are Impaired under the Plan and are entitled to vote on the Plan.

| Class | | Claims and Interests | Status | Voting Rights |
|-------|---|---------------------|--------|---------------|
| **Class** | 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| **Class** | 2 | Allowed Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| **Class** | 3 | North Mill Claim | Impaired | Entitled to Vote |
| **Class** | 4 | General Unsecured Claims | Impaired | Entitled to Vote |

4054967

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| **Class 5** | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| **Class 6** | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| **Class 7** | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### ARTICLE III.
### TREATMENT OF UNCLASSIFIED CLAIMS

**3.1    Administrative Creditor Claims.**  The legal and equitable rights of the holders of Administrative Claims other than Professional Fee Claims shall remain unaltered by the Plan.  The holders of Administrative Claims shall continue to be paid, post Confirmation, in accordance with their ordinary business terms until paid in full.

**3.2    Professional Fee Claims**.

(a)    Premised upon the payment and the timing described in Section 3.2(b)(i) immediately below, the Professionals have agreed to limit their recovery from the Debtor on account of their Allowed Professional Fee Claims to the funds available in the Professional Fee fund, in full and final satisfaction, vis a vis the Debtor, of such pre-Effective Date Claims, to be paid in accordance with Section 3.2(b) below.  The Disbursing Agent shall administer all distributions to Professionals under this Section.  All necessary applications by Professionals for compensation and reimbursement of expenses in connection with the Bankruptcy Cases prior to the Effective Date shall be filed with the Bankruptcy Court within forty-five (45) days following the Effective Date.

(b)    Allowed Professional Fee Claims shall be paid as follows:

(i)    On the first business day following the Confirmation Date, and as a condition precedent to the Plan going effective, the Professionals will receive from the Professional Fee Fund, payment in full of any and all fees payable as of that date pursuant to the Court's Administrative Fee Order entered by the Court on November 20, 2018, with the exception that to the extent that the Professional Fee Fund is insufficient to pay said amounts in full, then in such case professionals shall receive a respective pro-rata distributions of the Professional Fee Fund at that time; and

(ii)    Thereafter, following Court Approval of the Professionals' Final Fee Applications, the Professionals will receive payment of any remaining unpaid portions of their Allowed Professional Fee Claims incurred through the Effective Date, without interest, in Cash, upon court approval of same, from the Reorganized Debtor.

(iii)    With respect to Podium Strategies LLC and McElroy, Deutsch, Mulvaney & Carpenter, LLP, the Reorganized Debtor shall also be responsible for any amounts due to such professionals for time billed to the Debtor prior to the dates of their retention or the effective dates of their retention.

- 10 -

**3.3    General Administrative Claims (Other Than Professional Fee Claims).** The Reorganized Debtor is assuming, in the ordinary course of business, and shall pay, as and when they become due in the ordinary course of business and pursuant to regular trade terms, all General Administrative Claims.   No Administrative Claims Bar Date has been set and no administrative claimant shall be required to file a claim with the Court in order to be entitled to payment on account of same by the Reorganized Debtor.

**3.4    U.S. Trustee Fees**.  All outstanding U.S. Trustee Fees that have not been paid shall be paid no later than the Confirmation Date or when such U.S. Trustee Fees come due in the ordinary course.

**3.5    Priority Tax Claims**.  The Reorganized Debtor shall pay any Allowed Priority Tax Claims in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, in Cash, in an aggregate amount of such Allowed Priority Tax Claim payable in regular quarterly installments over a period of not more than five (5) years from the Petition Date, or pursuant to such other treatment agreed to by the Debtor and the Holder of such Allowed Priority Tax Claim; provided, however, that the Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with any Priority Tax Claim.   Any demand for any such penalty will be deemed disallowed by Confirmation of the Plan.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.1    Class 1 (Priority Claims)**.

(a)    **Impairment and Voting**.  Class 1 consists of all Priority Claims and is Unimpaired by the Plan and, therefore, is presumed to have accepted the Plan.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(b)    **Treatment**.  Except to the extent that a Holder of an Allowed Priority Claim and the Debtor shall have agreed in writing to a different treatment, in full and final satisfaction of such Claim, each holder of an Allowed Priority Claim in Class 1 shall receive payment in full in Cash, without interest, in an amount equal to such Allowed Priority Claim as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date when such Priority Claim becomes an Allowed Priority Claim.

**4.2    Class 2 (Other Secured Claims)**

(a)    **Impairment and Voting.**   Class 2 consists of Allowed Other Secured Claims and is Unimpaired by the Plan and, and, therefore, is presumed to have accepted the Plan.  Therefore, the Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

(b)    **Treatment**. Except to the extent that the Holder of the Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed Other Secured Claim, the Holder of

- 11 -

such Allowed Claim shall receive, at the election of Debtor, (i) payment in full in Cash of the unpaid portion of its Allowed Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, shall be paid in accordance with its terms), (ii) Reinstatement of its Claims, (iii) the Debtor's interest in the collateral securing such Allowed Other Secured Claim, or (iv) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

### 4.3    Class 3 (North Mill Loan Claim)

(a)    **Impairment and Voting**.  Class 3 consists of the Allowed North Mill Claim and is Impaired by the Plan.   The Holder of the Allowed North Mill Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment**.

(i)    Except to the extent that the Holder of the Allowed North Mill Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed North Mill Secured Claim, the Holder of such Allowed Claim shall receive the following treatment:  (i) the notice of default issued by North Mill pre-petition and the attendant rates of interest charged against the estate from and after the date said default was called (including the default interest rate and the rate of interest charged pursuant to the North Mill Final DIP Order), shall be abrogated with interest to be paid, calculated and charged from and after that date, only in accordance with the non-default contractual rate of interest provided under North Mill's pre-petition loan documents with the Debtor,  (ii) North Mill shall retain the Liens securing such Claim until paid in full (except to the extent that such liens collateralized a claim for default rate of interest), and (iii) North Mill shall receive payment in full on the principal amount of the claim (which does not include any amounts contributed by Anthony Tomasello as a junior participant in the North Mill Loan) plus interest, but only in amounts as modified by this section.

(ii)    Except as expressly modified hereby, or in the case, the North Mill Loan Agreement shall continue in full force and effect according to its terms, and nothing in the Plan or Confirmation Order shall be deemed to bar, enjoin, or otherwise effect North Mill's rights against non-debtors relating to the North Mill Loan Agreement,  provided however that North Mill shall forbear from the enforcement and exercise of any such rights unless and until the occurrence of an event of default under the Plan or the North Mill Agreements as modified by the Plan.  North Mill shall be entitled to all rights and remedies with respect to any default resulting from Debtor's breach of any of the terms of, or failure to comply with, the Plan or the North Mill Loan Agreement as modified by the Plan.

(iii)    Upon entry of the Confirmation Order, any and all obligations of the Debtor and/or Reorganized Debtor to North Mill with respect to the junior participation interest of Anthony Tomasello in the North Mill Loan in the principal amount of $160,000 shall be and hereby is released and discharged, and such liability shall no longer exist. In turn, any liability of North Mill to Anthony Tomasello in connection with the junior participation interest of Anthony Tomasello in the North Mill Loan in the principal amount of

- 12 -

$160,000 shall simultaneously be and hereby is released and discharged and such liability shall no longer exist.

(iv)    On or before December 24, 2018, Anthony Tomasello shall pay the sum of $50,000 to North Mill from personal funds, in order to reduce the Debtor's indebtedness to North Mill to approximately $300,000, not including fees and interest.

(v)    The Effective Date of the Plan shall not occur until the North Mill Loan is paid in full.

(vi)    The North Mill Loan shall be paid in full by the Debtor and/or Anthony Tomasello on or before January 4, 2019.  If payment is not made by such time, the Debtor shall be deemed in default of the North Mill Loan, and North Mill shall be entitled to pursue any and all remedies outlined under the North Mill Loan documents.

(vii)    Upon full payment of the North Mill Loan, North Mill shall provide a general release of the Debtor, the Reorganized Debtor, and the guarantors, and the Debtor, Reorganized Debtor, and the guarantors shall provide a general release to North Mill.

(viii)    To the extent that by virtue of the historical lock box arrangement between the Debtor and North Mill, customers/account debtors continue to deliver their payments to the North Mill lock box account at Wells Fargo after North Mill has been paid in full, the Debtor or the Reorganized Debtor shall be responsible for setting up a new account and beginning on the date that North Mill is paid in full, the parties will work together as follows:  (i) North Mill shall instruct Wells Fargo to refrain from cashing any customer checks or from depositing them into the lockbox account and shall instead instruct Wells Fargo to FedEx all uncashed customer checks to American Gaming & Electronics, 223 Pratt St, Hammonton, NJ 08037, with the charges for such FedEx to be charged to recipient, and (ii) with respect to ACH transfers, North Mill shall instruct Wells Fargo to move such collected amounts from the North Mill lock box account to the Debtor/Reorganized Debtor's new account.  The parties will work together to accomplish this transition for a period of 30 days, in order to provide the Debtor/Reorganized Debtor with sufficient time to advise each of its customers of new payment arrangements.  All incidental costs of transferring funds over, including bank fees and the like shall be the responsibility of the Debtors or Reorganized Debtors.  At the conclusion of the 30-day period, no further ACH transfers nor payments of any type will be accepted into the North Mill lock box account at Wells Fargo.  In the event that a customer's ACH transfer shall be reversed for any reason or no reason after the date that North Mill has been paid in full and released its liens, the Reorganized Debtor shall be responsible to make good on the reversed transaction and to cover all bank fees and incidental charges relating to same and the Tomasello personal guaranty shall continue in full force and effect to cover all such obligations with respect to any such reversed customer transactions.

### 4.4    Class 4 (General Unsecured Claims).

(a)    **Impairment and Voting**.  Class 4 consists of General Unsecured Claims, and is Impaired by the Plan.  Holders of the Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

- 13 -

(b)    **Treatment**.  Except to the extent that the Holder of a General Unsecured Class 4 Claim agrees to less favorable treatment, Class 4 Allowed Claimants shall receive, on the Effective Date, a pro rata distribution of 100% of the amount on deposit in the Unsecured Creditor Fund with the numerator calculated as the amount on deposit with the Unsecured Creditor Fund and the denominator calculated as the sum of all Allowed Class 4 Claims. Based on the Confirmation Fund in comparison with the sum of all Allowed Class 4 Claims (currently based on scheduled amounts), the Debtor anticipates a 6% distribution on account of Class 4 claims.

### 4.5    Class 5 (Intercompany Claims).

(a)    **Impairment and Voting**.  Class 5 is Impaired by the Plan.  The Holders of Allowed Class 5 Claims are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

(b)    **Treatment**.  Pursuant to the Plan, Intercompany Claims shall be expunged.  In no event shall an Intercompany Claim constitute an Allowed Claim.

### 4.6    Class 6 (Subordinated Claims).

(a)    **Impairment and Voting**.  Class 6 is Impaired by the Plan.  The Holders of Allowed Class 6 Claims are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

(b)    **Treatment**.  Pursuant to the Plan, Subordinated Claims shall be expunged.  In no event shall a Subordinated Claim constitute an Allowed Claim.

### 4.7    Class 7 (Interests).

(a)    **Impairment and Voting**.  Class 7 is Fully Impaired under the Plan and, therefore, is presumed to have rejected the Plan.  Therefore, the Holders of Claims in Class 7 are not entitled to vote to accept or reject the Plan.

(b)    **Treatment**.  With the exception of Interest holder and Subordinated Claim Holder Anthony Tomasello, who will be: (i) waiving and releasing all claims with respect to his $1.79 million prepetition note; (ii) waiving and releasing all prepetition claims relating to his prepetition junior participation in the North Mill Loan; (iii) waiving and releasing all post-petition claims relating to his junior participation in the North Mill Cash Collateral and DIP Agreement; and (iv) contributing and funding both the Professional Fee Fund and the Unsecured Creditor Fund, upon the Effective Date of the Plan, all interests shall be cancelled without any distributions to be made on account of such Interests and Tomasello shall become the 100% owner of the Debtor and Reorganized Debtor.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1    **Cancellation of Pre-Petition Documents and Instruments of Debtor.** On the Effective Date, except as otherwise expressly provided in the Plan, all instruments and other documentation or agreements representing or giving rise to Claims against the Debtor shall

- 14 -

be deemed canceled and of no further force or effect, without any further action on the part of the Bankruptcy Court or any Person. The holders of such canceled instruments and other documentation shall have no rights arising from or relating to such instruments, securities, or other documentation, but only such rights as are provided under the Plan.

**5.2     Confirmation Order**. The Confirmation Order shall be in a form acceptable to North Mill (in its discretion). The Confirmation Order shall grant the Debtor and the Reorganized Debtor full authority to enter into and consummate all transactions contemplated under the Plan to be effective on and after the Effective Date (which shall be memorialized in writing in a form acceptable to North Mill in its sole and absolute discretion) and perform all actions and undertakings necessitated thereby and therefor.

**5.3     Vesting Of Assets In Reorganized Debtor**. Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens expressly preserved and continued under the Plan). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting any of the foregoing, the Reorganized Debtor may pay the charges incurred on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court. This Section shall be subject to the terms of the North Mill DIP Agreement and the North Mill Final DIP Order.

**5.4     Cramdown and No Unfair Discrimination**. In the event that any impaired Class of Claims or Interests rejects the Plan or is deemed to have rejected the Plan, the Debtor reserves the right, without any delay in the occurrence of the Confirmation Hearing or Effective Date, to (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, and/or (b) amend the Plan in accordance with the Bankruptcy Code and Bankruptcy Rules.

**5.5     Sources Of Cash For Distribution**. The Confirmation Fund shall be the source of Cash for the initial payments required to be made by the Disbursing Agent on the Effective Date

**5.6     Section 1145 Exemption**. To the maximum extent allowable under Section 1145 of the Bankruptcy Code, the issuance and allocation of the Interests in the Reorganized Debtor pursuant to the Plan shall be exempt from registration under any federal, state or local law requiring registration for offer or sale of a security.

**5.7     Effectuating Documents; Further Transactions**. The Debtor and the Reorganized Debtor, and their respective officers and designees, is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law.

4054967

**5.8    Employee Obligations**.  Except as otherwise provided in the Plan, the Reorganized Debtor shall honor the Debtor's written contracts, agreements, policies, programs and plans for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of the Debtor who served in such capacity at any time.   To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to Sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and assigned to the Reorganized Debtor.

**5.9    Directors and Officers of the Reorganized Debtor**.  As of the Effective Date, the term of the current members of the board of directors of the applicable Debtor shall expire, and the initial boards of directors and the officers of the Reorganized Debtor shall be appointed. Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Debtor hereby discloses as is disclosed in the Disclosure Statement that Anthony Tomasello shall serve as the Reorganized Debtor's sole director  and shall serve as the President and Chief Executive Officer of the Reorganized Debtor. The Debtor will disclose prior to confirmation, the nature of any compensation to be paid to Tomasello as well as to any other Director or Officer who is slated to receive remuneration of any sort from the Reorganized Debtor. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the organizational documents of the Reorganized Debtor.

**5.10    Utility Deposits.**   On the Effective Date, all adequate assurance deposits made by the Debtor pursuant to the Interim Order dated October, 2018 *(i) Prohibiting Utility Companies From Discontinuing, Altering Or Refusing Service On Account Of Prepetition Invoices, (ii) Deeming Utility Companies To Have Adequate Assurance Of Future Payment, And (iii) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) and 366* [Docket No. 27], and any subsequent Final Order regarding same, shall be returned to the Debtor, and Debtor shall have no further obligation to maintain security deposits for  utility providers beyond the terms of any written agreements with such providers.

**5.11    Charter**.  The Debtor's charter shall be amended to reflect the Debtor's name change to "American Gaming & Electronics, Inc."

## ARTICLE  VI.
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

**6.1    Disbursing Agent**.

(a)     Porzio, Bromberg & Newman shall be the Disbursing Agent and shall be responsible for all distributions required under the Plan, including (A) distributions from the Unsecured Creditor Fund under Section 4.4 of the Plan, and (B) distributions from the Professional Fee Fund under Section 3.2 of the Plan.  Notwithstanding the foregoing, Porzio, Bromberg & Newman shall have no obligation to make distributions from the Confirmation

Fund on account of Priority Claims or Administrative Claims, both of which shall be the responsibility of the Reorganized Debtor.

(b)    The Confirmation Fund shall be funded on or before the Confirmation Date.

**6.2    Manner Of Payment**.  Any payment of Cash under the Plan may be made either by check drawn or by wire transfer from a domestic bank, at the option of the Disbursing Agent.

**6.3    Payments And Distributions On Disputed Claims**.   As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Disputed Claim Reserve.  No distribution shall be made on a Claim where only a portion of such Claim is disputed until such dispute is resolved by settlement or Final Order.

**6.4    Disputed Claim Reserve**.  To the extent that a disbursing agent makes a distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such Holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

**6.5    Transmittal Of Distributions To Parties Entitled Thereto**.   All distributions by check shall be deemed made at the time such check is deposited in the United States mail, postage prepaid.  Any distributions by wire transfer shall be deemed made as of the date of the wire transfer is made.  Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or provided in the Plan, any distribution required under the Plan on account of an Allowed Claim, shall be mailed to (i) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (ii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Claim to receive distributions, (iii) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.  The Holder of a Claim shall be required to promptly notify the Reorganized Debtor and the Bankruptcy Court of any change in its mailing address.

**6.6    Distribution Of Unclaimed Property**.  Except as otherwise provided in the Plan, any distribution under the Plan which is unclaimed after three (3) months following any Distribution Date shall be forfeited, and such distribution, together with any interest earned thereon, and shall return to and revest in the Reorganized Debtor.

**6.7    Saturday, Sunday Or Legal Holiday**.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

**6.8    Setoffs And Recoupment**.  Subject to the terms of the Plan and pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor or Reorganized Debtor, as appropriate, may but shall not be required to, setoff against or recoup

- 17 -

from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Debtor may have against the Holder of such Claim.

      **6.9**    **Withholding Or Other Taxes**.  The Reorganized Debtor shall be entitled, but are not directed, to deduct any federal, state, or local withholding or other taxes from any distributions under the Plan.  As a condition to making any distribution under the Plan, all Holders of Allowed Claims shall provide the Reorganized Debtor with such Holder's taxpayer identification number and such other information or certification as the Reorganized Debtor may deem reasonably necessary to comply with applicable tax reporting and/or withholding laws or regulations.  The Reorganized Debtor shall issue any and all required forms to all Holders of Allowed Claims to either (i) their last known address per the records obtained by the Reorganized Debtor or (ii) forwarding addressed provide by the United States Postal Service or by creditors themselves.  If a Creditor fails to provide the Reorganized Debtor with the information necessary to comply with any reporting and withholding requirements of any governmental unit within forty-five (45) days from the date of the request, the Creditor shall be deemed to have forfeited their right to a distribution under the Plan without further Order of the Bankruptcy Court.

      **6.10**    **Fractional Cents And *De Minimis* Distributions**.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).  Any distribution of less than $50.00 will be considered *de minimis*, and Holders of Allowed Claims that are entitled to an interim or final distribution of less than $50.00 will not receive any distribution.  Such funds will remain with and revest in the Reorganized Debtor.

      **6.11**    **Allowance And Disallowance Of Claims**.

      (a)    **Allowance Of Claims**.  Except as expressly provided in the Plan, no Claims shall be deemed Allowed by virtue of the Plan or the Confirmation Order unless and until such Claim is deemed Allowed under the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim.  Notwithstanding the foregoing, any Claim included in the Debtor's Schedules that is not listed as contingent, unliquidated, and/or disputed shall be an Allowed Claim.  Any Proof of Claim Filed in an unliquidated amount shall be deemed Allowed in the amount listed in the Debtor's Schedules as liquidated, not contingent and not disputed.  The Allowance and disallowance of Claims shall be in all respects subject to the provisions of Section 502 of the Bankruptcy Code.

      (b)    **Disallowance Of Claims**.  All Claims held by Persons against whom the Debtor or Reorganized Debtor, as appropriate, have filed or commenced or may in the future file or commence a Claim or Cause of Action under Sections 522(f), 522(h), 542, 543, 544, 547, 548, 549, 550, 551, 553 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code.  The Holders of any and all Claims Filed with the Bankruptcy Court after the relevant bar date shall be deemed disallowed without further action by the Debtor or Reorganized Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Holders of any and all Claims Filed with the Bankruptcy Court after the relevant bar date shall not be entitled to a distribution, unless otherwise allowed by Final Order of the Bankruptcy Court.

- 18 -

**6.12    Resolution Of Disputed Administrative Claims And Disputed Claims**.

(a)    **Prosecution Of Objections To Claims**.    Prior to the Effective Date, the Debtor shall have standing and the right to commence and pursue objections to Claims, and the Reorganized Debtor shall have such standing after the Effective Date.    All objections to Claims shall be Filed with the Bankruptcy Court by the Claim Objection Deadline and served upon the Holders of each of the Claims to which objections are made.    The Debtor or Reorganized Debtor shall have the right, after notice and a hearing, to seek an extension of the Claim Objection Deadline and such an extension shall not be deemed a material modification of the Plan.

(b)    **Objections To Claims**.    An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court by the Debtor or Reorganized Debtor.    Except as expressly set forth herein, nothing herein, in the Confirmation Order or in any Order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, Avoidance Action, right of setoff or recoupment or other legal or equitable defense which the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim.    Except as set forth herein, upon Confirmation, the Debtor and Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and recoupment and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim.

**6.13    Controversy Concerning Impairment**.    If a controversy arises as to whether any Claims or any Class of Claims or Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before approving the Disclosure Statement.

## ARTICLE  VII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1    Assumption and Rejection Of Executory Contracts/Unexpired Leases; Cure Amount**.    On the Confirmation Date, each Executory Contract/Unexpired Lease set forth on **Schedule 1** hereto shall be deemed assumed pursuant to Section 365 of the Bankruptcy Code, effective as of the Confirmation Date.    The cure amounts, if any, due to the non-Debtor parties to Executory Contracts/Unexpired Leases to be assumed are also set forth on **Schedule 1**.    All cure amounts shall be paid by the Reorganized Debtor within the later of thirty (30) days after (i) the Effective Date and (ii) the date the Bankruptcy Court enters a Final Order determining the cure amount with respect to any Executory Contract/Unexpired Lease the counterparty to which objects to the cure amount set forth on **Schedule 1** hereto, or (iii) at such later date as may be agreed to by the holder of the claim for cure.

(a)    Objections, if any, to any cure amount set forth on **Schedule 1** shall be Filed and served on the Debtor in accordance with Section 11.5 hereof, on or before the Objection Deadline.    The Bankruptcy Court shall adjudicate any such objections at the Confirmation Hearing.    The Confirmation Order or other Final Order determining the cure amount with respect to any Executory Contract/Unexpired Lease shall govern the amount of the Debtor's obligations under such Executory Contract/Unexpired Lease for all purposes and for all

- 19 -

time periods up to and including the effective date of the assumption of such Executory Contract/Unexpired Lease, and any counterparty to an Executory Contract/Unexpired Lease shall be forever barred and enjoined from seeking or claiming any other or further amounts from the Debtor or Reorganized Debtor under such Executory Contract/Unexpired Lease.

(b)     This Section 7.1 shall not affect any Executory Contract/Unexpired Lease (i) previously assumed or rejected by an Order of the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code, or (ii) that is, as of the date of the Confirmation Hearing, the subject of a pending motion by the Debtor to assume or reject pursuant to Section 365 of the Bankruptcy Code.

(c)     Any Executory Contract/Unexpired Lease not assumed shall be deemed rejected effective as of the Confirmation Date.

(d)     The Confirmation Order shall constitute an Order of the Bankruptcy Court, pursuant to Section 365 of the Bankruptcy Code, approving the assumption or rejection as the case may be, of each Executory Contract/Unexpired Lease as addressed in this section 7.1, effective as of the Confirmation Date.

(e)     All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts. On the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

(f)     Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Reorganized Debtor if necessary to continue any D&O liability insurance policies in full force) any and all of the D&O liability insurance policies of the Debtor that remain in force as of the Effective Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's assumption of any such D&O liability insurance policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed in connection with any D&O liability insurance policies in force as of the Effective Date, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed. On or before the Effective Date, the Reorganized Debtor may, in its sole discretion, obtain reasonably sufficient tail coverage (i.e., D&O insurance coverage that extends beyond the end of the policy period) under a directors and officers' liability insurance policy for the current and former directors, officers, and managers for such terms or periods of time, and placed with such insurers, to be reasonable under the circumstances and ordered by the Bankruptcy Court in the Confirmation Order and to the extent such tail coverage is obtained on or before the Effective Date, such policies shall be considered D&O liability insurance policies and shall be assumed by the Reorganized Debtor.

**7.2**     The Debtor may modify, revise or amend **Schedule 1** by adding or removing any Executory Contract/Unexpired Lease from such schedule at any time prior to the Objection Deadline. The counterparty to any Executory Contract/Unexpired Lease added to **Schedule 1** by such date shall have until the Confirmation Hearing to File and serve any

- 20 -

objections to the proposed cure amount or to the assumption of such Executory Contract/Unexpired Lease. If any such objection is timely Filed and is not resolved by the consent of the Debtor and the counterparty within ten (10) days of the Confirmation Hearing, the Debtor shall request that the Bankruptcy Court schedule a hearing to consider and adjudicate the objection. The cure amount shall be paid in accordance with Section 7.1 hereof.

**7.3** **Bar To Rejection Damages**. Except to the extent that another bar date (or last date by which a Creditor must file a Proof of Claim) applies pursuant to the Bankruptcy Rules or a separate Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts/Unexpired Leases pursuant to Sections 7.1(c) and 7.1(d) of the Plan must be filed with the Clerk of the Bankruptcy Court, 401 Market Street, Camden, New Jersey 08101, and a copy served on counsel for the Debtor, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a distribution or enforceable against the Debtor and its successors, assigns or its assets. Claims arising from the rejection of Executory Contracts/Unexpired Leases shall be treated under the Plan as a General Unsecured Claim under Class 4.

# ARTICLE VIII.
## CONDITIONS PRECEDENT

**8.1** **Conditions Precedent to Confirmation of the Plan**. The following are conditions precedent to Confirmation that must be satisfied, or waived in accordance with Section 8.3 of the Plan:

(a) The Plan and Disclosure Statement and all of the schedules, documents and exhibits thereto shall have been Filed in a form and substance acceptable to the Debtor and North Mill in their sole discretion;

(b) The Confirmation Order shall approve in all respects the provisions, terms and conditions of the Plan and shall be in a form and substance acceptable to the Debtor and North Mill in their sole discretion;.

**8.2** **Conditions Precedent to Effective Date**. The following are conditions precedent to the Effective Date that must be satisfied, or waived in accordance with Section 7.3 hereof:

(a) all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed;

(b) the Confirmation Fund shall be fully funded and the Disbursing Agent shall have full authority to administer such funds;

(c) the notice of Confirmation Hearing shall comply with Bankruptcy Rule 2002(c)(3);

(d) The Confirmation Date shall have occurred, and

(e) The Debtor and North Mill shall have entered into any new Exit Financing Agreement, to the extent requested by North Mill.

**8.3** **Waiver Of Conditions Precedent**.  The Debtor and/or North Mill, as the case may be,  may waive any of the conditions precedent to Confirmation at any time, without notice and without further action, order, or approval of the Bankruptcy Court.

**8.4** **Effect Of Non-Occurrence Of Conditions To The Effective Date**.  Each of the conditions to the Effective Date must be satisfied or waived by the Debtor or North Mill, as the case may be, and the Effective Date must occur within sixty (60) days of Confirmation, or by such later date established by Final Order.  If the Effective Date has not occurred within one sixty (60) days of Confirmation, then upon motion by a party in interest (including the Debtor) made before the Effective Date and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion to vacate, the Confirmation Order may not be vacated if the Effective Date occurs before the Bankruptcy Court enters a Final Order granting such motion.  If the Confirmation Order is vacated, then except as provided in any Final Order vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2) prejudice in any manner the rights of the Debtor or any other Person; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Person.

## ARTICLE IX.
## EFFECTS OF CONFIRMATION

**9.1** **Authority to Effectuate Plan**.  Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Debtor.  The Debtor and/or Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

**9.2** **Binding Effect**.  Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all Holders of Claims and Interests.  Subject to the terms of the Plan, upon the Effective Date, every Holder of a Claim or Interest shall be precluded and permanently enjoined from asserting against the Debtor and/or Reorganized Debtor any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

**9.3** **Discharge Of The Debtor**.

(a)    Upon the Effective Date, the Debtor shall be deemed discharged under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502 of the Bankruptcy Code, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan.

- 22 -

(b)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, or Anthony Tomasello, any other or further Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, except (the exception applying to Anthony Tomasello only) for any claims sounding in willful misconduct, actual fraud, gross negligence or personal injury. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor and/or Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

(c)     The Reorganized Debtor will indemnify and hold harmless former Officers and Directors John R. Rauen, Sam A. Basile, Robert M. Pickus and Francis X. McCarthy against any Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, except for claims based upon an adjudication of willful misconduct, actual fraud, or gross negligence.

9.4     **Injunction.**  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability that is released or discharged under the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or Anthony Tomasello or their property on account of any such released or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (e) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

9.5     **Cancellation and Revesting of Ownership Interests in the Debtor.** Effective on the Effective Date, any and all stock interests or other equity interests in the Debtor existing prior to the Confirmation Date, shall be cancelled, discharged and released, and all ownership interests in the Reorganized Debtor shall be immediately and fully vested, without further documentation or order of this Court,  in the Plan Sponsor, Anthony Tomasello, who shall serve as sole Director, sole shareholder as well as President and Chief Executive Officer of the Reorganized Debtor.

9.6     **Exculpation. AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NONE OF THE RELEASEES SHALL HAVE OR INCUR LIABILITY FOR, AND ARE HEREBY RELEASED FROM ANY OBLIGATION OR CLAIM TO ONE ANOTHER, TO ANY HOLDER OF A CLAIM OR INTEREST, OR ANY OTHER PARTY IN INTEREST OR PERSON, FOR ANY ACT OR**

4054967

OMISSION THAT OCCURRED ON OR BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE BANKRUPTCY CASES, THE ADMINISTRATION OF THE DEBTOR'S ESTATE, THE FORMATION, NEGOTIATION AND/OR PURSUIT OF CONFIRMATION OF THE PLAN, ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED IN CONNECTION WITH THE PLAN, OR THE CONSUMMATION OF THE PLAN, EXCEPT FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD, AND EACH RELEASEE SHALL IN ALL RESPECTS BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THE PLAN; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN, AND THE FOREGOING RELEASE DOES NOT RELEASE THE PERSONAL LIABILITY OF ANY OF THE RELEASEES FOR ANY STATUTORY VIOLATION OF APPLICABLE TAX LAWS OR BAR ANY RIGHT OF ACTION ASSERTED BY A GOVERNMENTAL TAXING AUTHORITY AGAINST THE AFOREMENTIONED RELEASED PARTIES FOR ANY STATUTORY VIOLATION OF APPLICABLE TAX LAWS.  EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE RELEASEES ARE EACH GRANTED THE PROTECTIONS AND BENEFITS OF SECTION 1125(E) OF THE BANKRUPTCY CODE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION, THE PLAN OR THE CONFIRMATION ORDER, THE OBLIGATIONS OF THE GUARANTORS OF THE NORTH MILL LOAN, THE NORTH MILL CLAIM, AND THE NORTH MILL FINAL DIP ORDER SHALL NOT BENEFIT IN ANY WAY FROM ANY MODIFICATIONS TO THESE OBLIGATIONS AS ARE EFFECTUATED PURSUANT TO THE PLAN, BUT RATHER SHALL REMAIN FULLY LIABLE TO NORTH MILL FOR THE ORIGINAL AMOUNTS, TERMS AND RATES OF INTEREST (INCLUDING DEFAULT INTEREST) AS IS SET FORTH IN THE NORTH MILL PREPETITION LOAN DOCUMENTS AS WELL AS IN THE NORTH MILL FINAL DIP ORDER.

NOTWITHSTANDING ANY LANGUAGE TO THE CONTRARY CONTAINED IN THE PLAN AND/OR PLAN CONFIRMATION ORDER, NO PROVISION OF THE PLAN OR PLAN CONFIRMATION ORDER SHALL (I) PRECLUDE THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("<u>SEC</u>") FROM ENFORCING ITS POLICE OR REGULATORY POWERS; OR (II) ENJOIN, LIMIT, IMPAIR OR DELAY THE SEC FROM COMMENCING OR CONTINUING ANY CLAIMS, CAUSES OF ACTION, PROCEEDINGS OR INVESTIGATIONS AGAINST ANY NON-DEBTOR PERSON OR NON-DEBTOR ENTITY IN ANY FORUM.

4054967

# ARTICLE X.
## RETENTION OF JURISDICTION

**10.1    Retention of Jurisdiction**.  Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims;

(b)    hear and determine all Professionals' applications for compensation and reimbursement of expenses incurred in the Bankruptcy Cases;

(c)    determine any and all adversary proceedings, motions, applications, and contested or litigated matters and consider and act upon the compromise and settlement of any Claim against the Estates;

(d)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection therewith;

(e)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection therewith;

(f)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(h)    hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, the Confirmation Order;

(i)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Cases;

(j)    hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(k)    hear and determine all matters related to the property of the Estate

- 25 -

4054967

or the Debtor from and after the Effective Date;

       (l)     hear and determine all claims, disputes or actions by the Plan Administrator to collect amounts owed by the Reorganized Debtor to the Plan Administrator for distribution under the Plan;

       (m)    hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

       (n)     enter a Final Decree closing the Bankruptcy Case.

    **10.2**    In the event North Mill and the Reorganized Debtor enter into a new financing agreement to be effective on and after the Effective Date (which agreement shall be memorialized in writing in a form acceptable to North Mill in its sole and absolute discretion), the Bankruptcy Court shall not retain or have jurisdiction over any such new agreement).

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

    **11.1**    **Reports**.  Until a Final Decree is entered, the Debtor shall submit all post-Confirmation quarterly reports to the U.S. Trustee as required by the U.S. Trustee guidelines (with a copy served on the Office of the U.S. Trustee) setting forth all receipts and disbursements of the Debtor.  The first report shall be filed within thirty (30) days after the end of the quarter in which the Effective Date occurs.  The Debtor shall be responsible to request that a Final Decree be entered in this Bankruptcy Case.  The Debtor shall also be responsible for any quarterly fees due to the U.S. Trustee from and after the Effective Date until the Bankruptcy Case is closed.

    **11.2**    **Severability of Plan Provisions.**  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, on its own motion or at the request of the Debtor or Reorganized Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

    **11.3**    **Allocation of Plan Distributions between Principal and Interest.**  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

    **11.4**    **No Interest**.  Except as expressly stated in the Plan, no interest, penalty or late charge is allowed or shall be paid on any Claim.

**11.5    Notices**.  All notices, requests or demands for payments provided for in the Plan shall be in writing and shall be deemed to have been given when personally delivered by hand or deposited in any general or branch post office of the United States Postal Service. Notices, requests and demands for payments shall be addressed and sent postage pre-paid or delivered to the following:

*To the Debtor and/or Reorganized Debtor:*          Porzio Bromberg & Newman PC
                                                    100 Southgate Parkway
                                                    Morristown, NJ 07962
                                                    Attention: Warren J. Martin Jr., Esq.

                                                    -and-

                                                    American Gaming & Electronics, Inc.
                                                    223 Pratt Street
                                                    Hammonton, NJ 08037
                                                    Attention:  Anthony Tomasello,  CEO

*To the Disbursing Agent:*                          Porzio Bromberg & Newman PC
                                                    100 Southgate Parkway
                                                    Morristown, NJ 07962
                                                    Attention: Warren J. Martin Jr., Esq.

*To the U.S. Trustee:*                              United States Trustee - Region 3
                                                    One Newark Center, Suite 2100
                                                    Newark, NJ  07102
                                                    Attention: Jeffrey M. Sponder, Esq.

*To North Mill:*                                    Sherman, Silverstein, Kohl, Rose &
                                                    Podolsky, P.A.
                                                    308 Harper Drive, Suite 200
                                                    Moorestown, NJ 08057
                                                    Attention:  Arthur Abramowitz, Esq.

**11.6    Plan Controls Disclosure Statement**.  Notwithstanding anything to the contrary contained herein or in the Disclosure Statement, in the event and to the extent that any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

**11.7    Filing of Additional Documents**.  Prior to the Effective Date, the Debtor may File with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan that are not

- 27 -

inconsistent with the terms of the Plan.  On or after the Effective Date, the Debtor and/or the Reorganized Debtor may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate the terms and conditions of the Plan.

**11.8    Reservation of Rights**.  If the Plan is not confirmed by the Bankruptcy Court or any other Court of competent jurisdiction for any reason, the rights of the Debtor and all parties in interest in the Bankruptcy Cases shall and will be reserved in full.  Statements and provisions made in the Plan or in the Disclosure Statement are made only for the purpose(s) of the Plan.  If the Plan is withdrawn, the Confirmation Order is not entered, or if the Effective Date does not occur, no Person shall be bound by or deemed prejudiced by any such statement or provision.

**11.9    Rules of Interpretation; Computation of Time.**  For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document, schedule or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits, if any, are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.  In computing any period of time prescribed or allowed by the Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

**11.10    Direction to a Party**.  From and after the Effective Date, the Debtor may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**11.11    Successors and Assigns**.  The rights, duties and obligations of any Person named or referred to in the Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

**11.12    Compliance with Tax Requirements**.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by Federal, State, local or foreign taxing authorities.   Under Section 1146(a) of the Bankruptcy Code and applicable New Jersey State law, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**11.13    Waiver of Subordination**.  Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual

- 28 -

subordination rights to which they may have with respect to the distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under the Plan.

**11.14   Post-Effective Date Professional Fees**.  The reasonable fees and actual and necessary expenses incurred after the Effective Date by professionals for the Debtor shall be paid by the Debtor or Reorganized Debtor upon the submission of an invoice to the Debtor or Reorganized Debtor without the need for further notice to any Person or approval by the Bankruptcy Court.

**11.15   Governing Law.**  Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, and (b) governance matters shall be governed by the laws of the State of New Jersey, without giving effect to the principles of conflict of law thereof.

**11.16   Termination of the Committee**. The appointment of any Committee herein shall terminate on the Effective Date.

### ARTICLE  XII.
### MODIFICATION OF THE PLAN

**12.1**     The Debtor may alter, amend, or modify the Plan or any schedules or exhibits thereto under Bankruptcy Code Section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of the Plan, the Debtor may, under Bankruptcy Code Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially or adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

4054967

Dated: November 19, 2018

Respectfully submitted,

**AG&E Holdings, Inc. d/b/a American Gaming & Electronics, Inc.**

By: *_/s/ Anthony Tomasello_*

Name: Anthony Tomasello
Title:  Chief Executive Officer

4054967

# SCHEDULE 1

**American Gaming & Electronics, Inc., et al.**
**Case No.: 18- 30507 (ABA)**

<u>List of Executory Contracts and Unexpired Leases of</u>
<u>Non-Residential Real Property Assumed Under the Plan.</u>

| Contract Status | Entity Name & Address | Counterparty Name | Contract/Lease | Cure Cost (if Applicable) |
|---|---|---|---|---|
| Assumed | Wells Fargo Equipment Finance 800 Walnut Street Des Moines, Iowa 50309 | American Gaming & Electronics, Inc. | Xerox Copier Model# B7035 Serial # 5DA092103 Acct. No. 603-0188838-000 | $0.00 |

4083952